HENRY COOK, PROSECUTOR, v. BOARD OF ADJUSTMENT OF THE CITY OF TRENTON ET AL., DEFENDANTS.

Submitted May 4, 1937—Decided July 9, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the prosecutor, *William H. Geraghty.*

For the defendants, *Sidney Goldmann.*

The opinion of the court was delivered by

PARKER, J. The prosecutor asks this court to overrule the decision of the board of adjustment refusing to make an exception to the local zoning restrictions, of a piece of land on the northwest corner of West Lafayette street and Peace street in Trenton, by permitting the erection and operation of a gasoline station. The tract has a frontage of sixty-one feet six inches on the westerly side of Peace street, which is little more than an alley, being twenty-five

feet wide, and of seventy-one feet eight inches on the north side of Lafayette street, the roadway of which measures twenty-six feet ten inches from curb to curb. The land south of Lafayette street is zoned as industrial, permitting gas stations there; on the north side it is zoned for "business" and as to this the ordinance forbids erection of any building intended to be used for "(15) motor vehicle service station except as permitted in section 9." The ordinance itself is not contained in the state of the case, and apparently was not introduced in evidence when the depositions were taken by permission contained in the *allocatur;* and we gather such extracts from it as are here quoted, from the brief of the prosecutor, which states that "Section 9 allows the Board of Adjustment to 'permit in a business zone subject to the prohibition of section 6 the construction, extension, alteration or conversion of a building intended * * * for a motor vehicle station.'" The pertinent prohibition of section 6 barred, among other things such a building within two hundred feet of a church, measured along the street lines. Upon measurement it was found that the station projected in this case would be more than two hundred feet from a church, hence the specific prohibition did not apply, and the board of adjustment therefore had power to permit the proposed building and station at the place now in question, and thereby make an exception to the general provisions of subsection 15 of the regulations for a business zone. The board, after a hearing on notice to neighboring property owners, refused to make the exception, and by a unanimous vote; and on a rehearing of the matter, again unanimously refused the permit. It is to this refusal that the present writ is directed; and the proposition of the prosecutor is, as it must be, that the refusal was an illegal abuse of discretion on the part of the board, resulting in a deprivation of the right of property.

We consider that this discretion was properly exercised. The tract in question immediately adjoins a large district most of which is devoted to public or semi-public use, and the remainder of which is apparently destined to be so used in the not distant future. A map of this district would be illumi-

nating evidence of this, but the map contained in the state of the case is inadequate. However, a short description follows: Willow street, the next street west of Peace street, and about three hundred feet away, runs from south to north, beginning at the west end of Lafayette street, crossing the west end of Front street, one block to the north, then crossing West State street, the principal east and west street in Trenton, and continuing to the northern part of the city. There is a continuous stream of traffic in both Front and Lafayette streets, connecting with Willow street, in both directions. West of Willow street is a large tract belonging to the state, on which the state house stands, as well as the "Old Barracks," a relic of the colonial period, used as a museum. The state house tract is in effect a park. South of Lafayette street and directly opposite prosecutor's property, is the marble "War Memorial Building" scaling one hundred and fifty by two hundred and fifty feet on the map. On the northeast corner of Front and Willow streets is the old Masonic Temple, dating from the eighteenth century; and to the north of this, facing Willow street on the west, is the new Masonic Temple, scaling eighty-five by one hundred and fifty-five feet. East of this is a large Catholic church, with the church school and playground. In short, the locality may be described as a civic center. Through this, as already pointed out, run the two streams of east-bound and west-bound traffic. The prosecutor himself testified that there is on Lafayette street, for sixteen hours a day, an average of fifteen cars a minute. A police officer testified to five hundred and twenty-eight cars an hour. As to existing service facilities, the depositions indicate two commercial garage buildings on the south side of Lafayette street east of Peace street (in the industrial zone) and one commercial garage on the north side of Lafayette street, about two hundred feet east of prosecutor's property, and in the "business" zone. All three are close to South Warren street, which is a block east of Peace street, and is an important business street of Trenton.

In this matter of exercising the discretionary power to make exceptions to the general terms of a zoning ordinance, it is

fair to say that no two cases are precisely alike, but that the burden of proof is on the owner to show that the local situation calls for the exception, taking into consideration the interests of the landowner, the general policy of the ordinance, the needs of the traveling public effects on property values, the neighborhood conditions, and so on. Without some basis of fact, the board is without power to make exception. *St. Mary's Church* v. *Board*, 14 *N. J. Mis. R.* 288. In *Amon* v. *Rahway*, 117 *N. J. L.* 589, the board held a hearing without swearing witnesses, and also made an inspection; and their refusal was sustained. In *Shaiman* v. *Newark*, 15 *N. J. Mis. R.* 437, we held that the question whether the board was right or wrong must depend upon what appeared before it. After the allowance of the present writ, depositions were taken, which fill some eighty-five pages of the printed book; and are submitted to us for reading, but we find no indication of any evidence presented to the board itself. Following the cases of Shaiman and St. Mary's Church, a dismissal of the writ would be in order on procedural grounds. We think, in addition, that if the depositions had been before them, the refusal would be justified on the ground given by the board, of interference with the general improvement scheme above outlined, as well on the ground not taken in the decision, that there are adequate facilities in the neighborhood, and that further gasoline stations would depreciate property values. *Essex Investment Co.* v. *Newark*, 14 *N. J. Mis. R.* 181. In *Reheis* v. *Newark*, 117 *N. J. L.* 593, in a somewhat similar situation, the board granted a permit and was sustained by the city commission, and again by this court, the writer sitting alone on *certiorari*. But each case stands on its own facts. The general rule to be gathered from this line of decisions, only a few of which are here cited, is that the decision of the adjustment board after a hearing is presumably correct, and that where it follows the ordinance, such decision must be shown to have been clearly against the great weight of evidence presented to the board. We find no such situation in this case; and the writ is therefore dismissed, with costs.